becomes important to all of the defendants, and particularly Mr. Rodriguez, is because the government needed to prove three things, knowledge, participation, and an agreement. You're talking about count 20? 20 and 25, Your Honor. 20 and 25. Okay. Now, the government will surely point to some timing issues about that proof and the co-location of circumstances that could, at some point, evidence someone's consciousness of guilt. And without conceding those, I would point the court to record evidence that the main drug dealer in this case testified that there was no understanding with management about drug sales in the bathrooms between 2012 and 2015. There were no conversations about drug sales with the bathrooms, and in fact, the government pointed out to the district court that the Title III intercepts of the drug dealer's phone calls were not particularly interesting because the drug dealers did not talk to management and did not talk about management. So, as the co-location of circumstances may have come up, we contend that Mr. Rodriguez, there was no proof that Mr. Rodriguez joined in any conspiracy prior to 2015. Some witnesses say 2014 or 2015, and there are three particular instances that the government may point to, but it's important to see the timing of those. First is in the spring of 2015, Mr. Rodriguez was being followed. He called the cop-turned-informant Eddie Villarreal. There were discussions after that, and it became clear that the FBI was investigating drug dealing at the clubs. That happened in April 2015. The second instance that the government may point to was a period of time after drug sales had stopped and then had resumed after a number of months, and Mr. Rodriguez told someone at the clubs to please allow his guys who were Gucci to come back in. And that person took it to mean that he wanted people doing bad things to come back into the clubs. That happened in 2016. And the third was an instance in which a paid informant saw Mr. Rodriguez have a conversation, the content of which is unknown, with someone in a washroom as he washed his hands and left. That also happened in 2016. The import of that is that given the government's math that it pitched to the jury about drug quantities, it's impossible to get to 5 kilos unless you go back to 2013. We contend that it's improper to go back to 2013, and the only way the jury could have gotten to the requisite drug amount was to use the 14 kilograms of coke taken from Josephine Hinojosa months after the last substantive buy at the clubs at issue. Her arrest was in February 2017. The last substantive buy was in October 2016. And finally, Your Honors, Is there a chart or something at the trial that the government put up that gave the amounts of the coke? Of the cocaine, yes, Your Honor. There was a chart, and I can find that exhibit for you in rebuttal. The total weight of all the undercover buys without packaging was 20.8 grams. I think that record site is 82.18 to 19. And it's important to note that the jury here did not reach verdicts on any of the substantive counts prior to 2016. The only substantive verdict they reached for any of the defendants was October 2016. And the time of the conspiracy alleged in the indictment is much broader, but the jury obviously thought that those substantive offenses were not proven. Thank you, Your Honors. All right. Thank you very much. Ms. Bacchus-Leville. Counsel, I'm here to represent Mr. Casas in the case where he was convicted of the three of the 17 counts with which he was charged, two of which are conspiracies. The first is a conspiracy to violate the 856 statute, which, of course, the court is aware of the leading case in this circuit is the Chen decision. And then the other conspiracy is count 25, where essentially, as the government argued during the trial, the drug buys that are created to support count 25. If we reject your argument about how to properly interpret 856.82 from your brief, do you still have a conscious decision to resume aloud the drug sales in the clubs? Judge Elrod, we do. And we have so argued that in our brief. Even if you apply this very strict, and we have asserted and believe constitutionally vulnerable interpretation of 856, given the Chen decision, even if that were to occur, then yes, because at that point a very minimum, it is not just being there that counts. And if you examined the brief set forth the facts that are adduced by the government at this trial in some detail, and respectfully, everything is consistent with something one of the agents remarks upon during the testimony, which is, here's Mr. Casas, specifying what one of the persons who are selling these quantities in the bathroom says, don't let Casas see you selling drugs. And then as late as December of 2015, he is still instructing Rendon to stay on the bathrooms at the club and to make sure that that is occurring. And that is consistent with his knowledge of what was going on. And to be more pointed, Judge Elrod, in response to your question, there's absolutely no evidence for that. Regarding the first issue that Casas raised about the sufficiency of the evidence supporting his convictions on count 19 and count 20, which are the managing a drug premises counts, the conspiracy and the substantive count, we argue that the issue would be governed by plain error, because he raised specific grounds for his Rule 29 motion in the district court that are separate from those grounds. He's raised doing the drugs rather than to the contrary that the evidence was people didn't want him to see that they were selling drugs. Well, the making a place available includes failing to remove the drug dealers. So it's the flip side of the same coin. If you're allowing drug dealers to enter and allowing them to stay, you're also failing to remove them and failing to deny them entry. Didn't he, there's evidence that at a certain time period he wanted them gone. Well, the evidence is that he knew from before 2013 that they were regularly doing this in the clubs. Then we have repeat players coming in every weekend from that way after the point that he knew and selling drugs and it's happening. He's letting it happen. We also have a intercepted phone call from March 25th, 2015, where he now hosted states that his marching